WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ralph Thomas Jessup,<br><br>              Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>             Respondents. | No. CV-14-2097-TUC-LCK<br><br>**ORDER** |

Petitioner Ralph Jessup has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before the Court are the Petition (Doc. 1), Respondents' Answer (Doc. 18), and Petitioner's Reply and Supplement (Docs. 19, 24). The parties have consented to Magistrate Judge jurisdiction.[1] (Doc. 16.)

**FACTUAL AND PROCEDURAL BACKGROUND**

Jessup was convicted in the Pima County Superior Court on one count of theft of means of transportation, four counts of kidnapping, four counts of aggravated assault with a deadly weapon, one count of aggravated robbery, and two counts of armed robbery. (Doc. 18, Ex. B.) Jessup was sentenced to concurrent prison terms, the longest of which is twenty-one years. (*Id.*, Ex. C.)

The Arizona Court of Appeals summarized the facts in support of Jessup's convictions:

---

[1] This case was reassigned to the current judge on May 10, 2016. (Doc. 26.)

> In late 2008, D.H. and M.D. were in their home when several people, including Jessup, kicked open the back door and ordered the couple to the ground. Jessup and his accomplices subsequently tied up D.H. and M.D. and covered their heads with jackets and blankets. The invaders then demanded drugs and anything of value and ransacked the home. Jessup and his companions eventually left in a van that belonged to D.H. and M.D.
>
> D.H. freed himself and called police, who found the van parked in Jessup's back yard. During a search of Jessup's home and garage, officers found numerous items that had been taken from D.H. and M.D., as well as tools used during the home invasion.

(*Id.*, Ex. A at 2 (footnote omitted).)

Jessup appealed and the Arizona Court of Appeals affirmed his convictions and sentences. (*Id.*, Exs. A, E.) Jessup filed a Notice of Post-conviction Relief (PCR). (*Id.*, Ex. I.) Appointed counsel filed a notice that she could not identify any claims to raise in a PCR petition. (*Id.*, Ex. K.) Jessup submitted a pro se PCR Petition, which the court denied. (*Id.*, Exs. M, Q.) The court of appeals granted Jessup's petition for review but denied relief. (*Id.*, Exs. T, U.) Jessup submitted a second Notice of PCR and appointed counsel averred that he could not identify any claims for relief. (*Id.*, Exs. Z, AA, BB.) Jessup again submitted a pro se petition, which the court denied. (*Id.*, Exs. DD, FF, II.) The court of appeals granted Jessup's petition for review but denied relief. (*Id.*, Exs. PP, QQ.)

## DISCUSSION

Jessup raises three claims. Respondents contend most of the claims are not cognizable, in whole or in part. They contend the remainder of the claims are procedurally defaulted. The Court first will examine whether each claim is reviewable in this Court and whether it was properly exhausted.

### EXHAUSTION

**Principles of Exhaustion and Procedural Default**

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v.*

*Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**Analysis**

Claim 1

Jessup asserts three subclaims of ineffective assistance of counsel (IAC). Jessup alleges trial counsel (a) failed to challenge the search warrant, which he alleges was defective because the affidavit was insufficient to support the warrant. Specifically, he argues (i) the warrant and supporting affidavit did not include the garage, and (ii) the telephonic affidavit in support of the warrant did not include the sheds or four of the vehicles listed on the warrant (white pickup, Toyota pickup, black Corvette, and red Chevrolet Beretta).[2] Jessup also alleges PCR counsel was ineffective for failing to (b) discover and challenge the invalid search warrant, and (c) challenge the indictment as defective.

*Claim 1(a)(i)*

In the first PCR proceeding, Jessup alleged trial counsel was ineffective for not challenging an illegal search; specifically, that the police searched a garage not listed on the warrant. (Doc. 18, Ex. M at 5-6.) The state courts ruled on the merits of this claim. (*Id.*, Ex. Q at 3; Ex. U at 3-4.) Therefore, the Court will evaluate this portion of Claim 1(a) on the merits.

*Claim 1(a)(ii)*

In the second PCR proceeding and supplement thereto, Jessup argued that trial counsel failed to realize that four vehicles and the sheds were not properly included in the search warrant, and failed to obtain a copy of the affidavit in support of the search warrant and to file a motion to suppress. (*Id.*, Ex. DD at 11, 15-16; Ex. FF.) The PCR court found this claim precluded because it was raised or could have been raised in his first PCR proceeding. (*Id.*, Ex. II at 2.) The court of appeals concluded this claim was untimely pursuant to Arizona Rule of Criminal Procedure 32.4(a). (Doc. 18, Ex. QQ at

---

[2] Claim 1 of the Petition does not include these detailed allegations. However, they are alleged in Claim 2 and Jessup argued them in his reply and supplement. (Docs. 19, 24.)

- 4 -

4.) Because the last state court to rule on the claim found it barred based on an adequate and independent state rule, it is procedurally defaulted in this Court.

Jessup did not explicitly argue that he could establish cause to overcome this procedural default. However, in state court he argued that his PCR counsel was ineffective for failing to raise this claim. The Court need not evaluate cause because this claim fails on the merits. Jessup has not established that he was prejudiced by trial counsel's failure to raise this claim – that the telephonic affidavit did not include four of the vehicles or the sheds.

IAC claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A failure to raise untenable issues on appeal does not fall below the *Strickland* standard." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The Court does not have the recording of the telephonic affidavit or a transcript of the recording. However, it accepts Petitioner's representation, which was endorsed by the PCR court, that neither the sheds nor the four specific vehicles were included in the telephonic affidavit. (Doc. 18, Ex. MM at 4.) Regardless, Jessup has not alleged much less established that evidence presented at trial should have been suppressed because it was found in the sheds or additional vehicles. Jessup attached to the Petition three pages from the trial transcript in which a law enforcement officer testified to finding incriminating evidence in the garage (Doc. 1, Ex. B at 15-17.) However, he presented no evidence regarding the search of the cars or sheds. Therefore, Jessup has not demonstrated a reasonable probability that the outcome of the trial would have been different if counsel had challenged the search of these locations. Because he has not established prejudice arising from counsel's failure to challenge the warrant on this basis, the claim is without merit.

*Claims 1(b) and 1(c)*

Claims 1(b) and 1(c) are not cognizable in this Court because assertions that counsel was ineffective as to a collateral proceeding are precluded from review under the governing statute. 28 U.S.C. § 2254(i).

Claim 2

Jessup alleges the affidavit in support of the search warrant was defective and the search was invalid in violation of the Fourth Amendment.

This claim was raised for the first time in the second PCR Petition and supplement thereto.[3] (Doc. 18, Exs. DD, FF.) The PCR court ruled that the search warrant was

---

[3] Jessup asserts that he raised this claim in the first PCR petition. (Doc. 1 at 7.) Although he raised a claim that counsel was ineffective for failing to file a motion to suppress based on a defective search warrant, he did not allege a separate violation of his Fourth Amendment right to be free of an unlawful search and seizure. (*See* Doc. 18, Exs. M, N.)

- 6 -

supported by probable cause. (*Id.*, Ex. II at 5; Ex. MM at 4.) The court of appeals concluded this claim was untimely pursuant to Arizona Rule of Criminal Procedure 32.4(a). (Doc. 18, Ex. QQ at 4.) Because the last state court to rule on the claim found it barred based on an adequate and independent state rule, it is procedurally defaulted in this Court.

Even if not defaulted, this Fourth Amendment claim is not subject to review by the Court. In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Pursuant to *Stone*, a prerequisite for consideration of Jessup's Fourth Amendment claim is the denial of the chance to fully and fairly litigate the claim in state court.

Here, Jessup does not argue the State prevented him from fully litigating this claim. Rather, he alleges counsel failed to raise the issue at trial, on appeal, or in a PCR proceeding.[4] "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he in fact did so." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). If a petitioner did not pursue suppression in state court, *Stone* still bars the claim if the state court provides for the filing of such motions. *See Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (finding irrelevant whether petitioner litigated suppression in state court because California penal code allowed him to do so). Arizona allows for the filing of pretrial suppression motions and the denial of a motion may be appealed. Ariz. R. Crim. P. 16.1, 16.2; A.R.S. § 13-4031; *see State v. Nissley*, 362 P.3d 493, 451, 238 Ariz. 446, 498 (Ct. App. 2015). The Ninth Circuit has recognized that a defendant may fully litigate a suppression claim in the system provided by Arizona. *See Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005) (noting that petitioner filed a pre-trial

---

[4] *Stone* does not bar the related Sixth Amendment claim that counsel was ineffective in relation to the Fourth Amendment issue (as alleged in Claim 1). *See Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

motion to suppress, after an evidentiary hearing the court made factual findings and limited the admissible evidence and that decision was reviewed on appeal).

Because Jessup had the opportunity to fully litigate the Fourth Amendment claim, although he did not do so, the claim is barred by *Stone*.

Claim 3

Jessup alleges the indictment was defective on the charge of theft of means of transportation because the vehicle did not belong to the person alleged by the State, which violated his Fifth and Sixth Amendment rights.

Jessup arguably raised this claim in the second PCR proceeding. (Doc. 18, Ex. DD at 4-11.) The PCR court found the indictment was not deficient. (*Id.*, Ex. II at 4; Ex. MM at 2.) The court of appeals concluded this claim was untimely pursuant to Arizona Rule of Criminal Procedure 32.4(a). (Doc. 18, Ex. QQ at 4.) Because the last state court to rule on the claim found it barred based on an adequate and independent state rule, it is procedurally defaulted in this Court.

Jessup does not directly allege cause and prejudice to overcome the default of this claim. But, he alleges all counsel were ineffective, including his assertion in Claim 1(c) that PCR counsel failed to challenge the defective indictment. Claim 3, however, should have been raised, if at all, on direct appeal.[5] Before ineffectiveness of appellate counsel may be used to establish cause for a procedural default, it must have been presented to the state court as an independent claim. *Murray*, 477 U.S. at 489. Jessup did not properly exhaust in a PCR petition a claim that appellate counsel was ineffective for failing to fairly present Claim 3. (Doc. 18, Exs. M, N, DD, FF.) Ineffectiveness claims regarding counsel are now foreclosed in state court by Arizona Rule of Criminal Procedure

---

[5] Additionally, IAC of PCR counsel generally cannot constitute cause because a petitioner does not have a constitutional right to PCR counsel. *See Coleman*, 501 U.S. at 757. The Supreme Court has carved out a limited exception to that rule, holding that IAC of PCR counsel can operate as cause for IAC claims if the first time they can be raised is in a collateral proceeding. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). However, *Martinez* is not applicable to Claim 3 because it does not allege IAC.

- 8 -

32.2(a)(3) and 32.4(a). Because the Arizona state courts have not had a fair opportunity to rule on ineffectiveness of appellate counsel claims alleged as cause, and Jessup may not exhaust this claim now, it is technically exhausted but procedurally defaulted. *See Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 735 n.1. Therefore, IAC on appeal cannot operate as cause (to excuse the default of Claim 3) unless Jessup establishes cause and prejudice to excuse the default of the appellate IAC claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (ineffective counsel as cause can itself be procedurally defaulted). Jessup has made no argument that there is cause to excuse the default of a claim that his appellate counsel was ineffective for failing to fairly present this claim. Therefore, IAC on appeal cannot operate as cause to excuse the default of Claim 3.

Jessup also alleges as cause his lack of legal knowledge and resources. The Ninth Circuit has determined cause was not established by an inmate who asserted he was illiterate and that the inmate helping him had been released. *See Hughes v. Idaho State Bd. of Corr.*, 800 F2d 905, 909 (9th Cir. 1986) (finding that illiteracy cannot be relied upon to bypass state courts in favor of federal court). Here, Jessup is not illiterate and he has been able to adequately articulate his claims in both state court and this Court. Therefore, his limited knowledge and access to legal research has not prevented him from presenting his claims. *See Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (relying on the petitioner's state court filings which reflected sufficient legal knowledge).

Jessup has not alleged that a fundamental miscarriage of justice will occur if this claim is not reviewed on the merits. To demonstrate a fundamental miscarriage of justice based on factual innocence, a petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). To establish the requisite probability, the petitioner must demonstrate with new reliable evidence that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* at 324, 327.

Although Jessup argues there was insufficient evidence for him to be convicted of theft of means of transportation, nowhere in his filings has Jessup identified new evidence in support of that theory.

Claim 3 is procedurally defaulted.

## **MERITS**

### **Legal Standards for Relief Under the AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) created a "highly deferential standard for evaluating state-court rulings' . . . demand[ing] that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state

court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing

- 11 -

evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

### Claim 1(a)(i)

Jessup alleges trial counsel failed to move to suppress on the basis that the detached garage that was searched was not listed on the face of the warrant. As discussed above, the clearly established Supreme Court law governing IAC claims is set forth in *Strickland*.

On October 24, 2008, a Pima County Sheriff's Officer executed a search warrant at Jessup's residence. The warrant directed the search of "5974 S. Rex Stravenue to include storage sheds in backyard," several vehicles, and three persons including Jessup. (Doc. 18, Ex. M, Attach.) In denying this claim, the PCR court noted:

> the terms "storage shed" and "garage" are often interchangeable, especially in the context of such structures in the backyards of properties. Second, even if "garage" was somehow not included in the class of "storage sheds," nothing about the description of the property in the search warrant could have confused officers. An officer executing the search warrant would have known immediately that the warrant was referring to what Jessup refers to as the 'garage.' As such, the search warrant was sufficiently particular, and any motion by defense counsel would have failed.

(*Id.*, Ex. Q at 3.) The appellate court affirmed the PCR court's ruling. (*Id.*, Ex. U at 3-4.)

A search warrant "is valid if the description is sufficiently definite to enable the executing officer to reasonably ascertain and identify the place to be searched and the objects to be seized." *United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982) (citing *Steele v. United States*, 267 U.S. 498, 503-04 (1925)). Here, because the warrant identified the address of the property and explicitly identified "sheds" in the backyard, it was sufficiently particular. Further, the Ninth Circuit has determined in prior cases that use of the term "premises" in a warrant, as was used here, may be sufficient to include and authorize a search of the buildings thereon. *See United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982). "[T]he Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence." *United States v. Cannon*, 264 F.3d 875, 880 (9th Cir. 2001).

The search of the garage did not violate the Fourth Amendment by exceeding the scope of the warrant. Therefore, counsel was not ineffective for not filing a motion to suppress on that ground. Critically, the PCR court (which was the same judge that sat at the trial) and appellate court found that a suppression motion on this topic would not have been granted. Therefore, there is not a reasonable probability that an objection by trial counsel or a claim raised on appeal would have been successful. At a minimum, the state courts' denial of this claim was not objectively unreasonable.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must issue or deny a certificate of appealability (COA) at the time it issues a final order adverse to the applicant. A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right, and (2) whether the court's procedural ruling was correct. *Id.* The Court finds that reasonable jurists would not find this Court's procedural rulings or merits rulings debatable. Therefore, a COA will not issue.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and close this case.

**IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability.

Dated this 31st day of August, 2016.

*Lynnette C. Kimmins*
Honorable Lynnette C. Kimmins
United States Magistrate Judge